KELLY E. DUFORD, State Bar No. 295646
*kedwilliams@slatelawgroup.com*
CHRISTINE A. ROBLES, State Bar  No. 307309
*crobles@slatelawgroup.com*
SLATE LAW GROUP
750 B St. Suite 2250
San Diego, CA, 92101
Ph: (619) 546-4291
Fax: (619) 354-2449

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITESLATE, LLP, a California limited liability partnership, dba SLATE LAW GROUP, | Case No.: **'20 CV 2026 LAB AHG** |
| | **COMPLAINT FOR** |
| Plaintiff, | |
| vs. | 1.  **BREACH OF CONTRACT – COMMERCIAL LEASE AGREEMENT;** |
| THIRD AVENEWS, LLC, a California limited liability company; 2131 3ʳᵈ AVE DAILY TRANSCRIPT, LLC, a California limited liability company; MEISSNER JACQUET, an individual; TIM FOLEY, individually, and as a Member of THIRD AVENEWS, LLC and 2131 3ʳᵈ AVE DAILY TRANSCRIPT, LLC; RANDY GOODSON, individually, and as an Operating Member of 2131 3ʳᵈ AVE DAILY TRANSCRIPT, LLC; CRBE, INC, a Delaware Corporation; CAMILLE DOAN, individually, and as a | 2.  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| | 3.  **BREACH OF BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.*;** |
| | 4.  **NEGLIGENT MISREPRESENTATION;** |
| | 5.  **FRAUDULENT MISREPRESENTATION;** |
| | 6.  **CONCEALMENT;** |
| | 7.  **NEGLIGENCE;** |
| | 8.  **FRAUD;** |
| | 9.  **RESCISSION BASED ON NEGLIGENCE;** |
| | 10.  **RESCISSION BASED ON FRAUD;** |

employee of CBRE, INC and DOES 1-20, inclusive,

Defendants.

11.    **CANCELLATION OF INSTRUMENT (CIVIL CODE § 3412);**
12.    **UNJUST ENRICHMENT**
13.    **CONVERSION; AND**
14.    **TRESPASS TO CHATTELS**
15.    **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
16.    **EXTORTION**
17.    **ABUSE OF PROCESS-INITIATING FRIVOLOUS LITIGATION**
18.    **MAIL AND WIRE FRAUD**

**DEMAND FOR JURY TRIAL**

Plaintiff WHITESLATE, LLP dba SLATE LAW GROUP ("Plaintiff" or "SLATE"), alleges against Defendants THIRD AVENEWS, LLC, ("3rd Avenews"), a California limited liability company; 2131 3RD AVE DAILY TRANSCRIPT, LLC, ("TRANSCRIPT"), a California limited liability company; MEISSNER JACQUET ("JACQUET"), an individual; TIM FOLEY ("FOLEY"), individually and as a Member of 3RDAVE NEWS and TRANSCRIPT; RANDY GOODSON ("GOODSON"), CRBE, INC, ("CBRE"), CAMILLE DOAN ("DOAN"), individually, and as an employee of CRBE, INC individually and as an Operating Member of Daily Transcript; and DOES 1-20 (collectively referred to as "Defendants"), the following for Plaintiff's Complaint and Jury Demand ("Complaint"):

**PARTIES**

1.     Plaintiff WHITESLATE, LLP dba SLATE LAW GROUP ("SLATE") is, and at all times relevant hereto was, a California Limited Liability Partnership, having its principal place of business in San Diego County, California.

2.     Defendant THIRD AVENEWS, LLC is, and at all times relevant hereto was, a California Limited Liability Company, organized in California and conducting business in and having its principal place of business in San Diego County, California.

3.     Defendant 2131 3RD AVE DAILY TRANSCRIPT, LLC ("TRASNCRIPT") is, and at all times relevant hereto was, a California Limited Liability Company, organized in California and conducting business in and having its principal place of business in San Diego County, California.

4.     Defendant MEISSNER JACQUET (JACQUET), an individual, is now, and at all times relevant hereto was, a resident of San Diego County, California.

5.     Defendant TIM FOLEY ("FOLEY"), an individual, is now, and at all times relevant hereto was, a resident of San Diego County, California.

6.     Defendant RANDY GOODSON ("GOODSON"), an individual, is now, and at all times relevant hereto was, a resident of San Diego County, California.

7.     CRBE, INC, ("CBRE"), and at all times relevant hereto was, a Delaware corporation, organized in Delaware and conducting business in California.

8.     CAMILLE DOAN ("DOAN"), an individual, is now, and at all times relevant hereto was, a resident of San Diego County, California.

9.     DOE 1 through DOE 20, inclusive, are fictitious names of Defendants sued herein under the provisions of California Code of Civil Procedure § 474. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such Defendants. Plaintiff will seek leave of Court to amend this Complaint to set forth the true names and capacities of such Defendants when their identities become known to it.

10.     Plaintiff is informed and believes, and thereon alleges, that each of the Defendants herein were, at all times relevant to this action, the agent, employee, representing partner, or joint venture of the remaining Defendants and acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

//

//

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

12.     This Court has personal jurisdiction over Defendant CBRE, Inc. A corporation organized and existing under the laws of Delaware and conducting significant business in California.

13.     This Court has personal jurisdiction over all other Defendants as venue is proper in this District pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein giving rise to this litigation occurred within the state of California.

14.     This Court has personal jurisdiction over DOE defendants because all acts or omissions by DOE defendants, with respect to one or more causes of action, as well as Plaintiff's harm arising from these acts or omissions, occurred in County of San Diego, State of California.

15.  This Court has jurisdiction over this action pursuant to the U.S. Constitution, Article III and 28 U.S.C. § 1331, as this action involves federal questions regarding Defendants violations of 18 U.S.C. § 1962 and 18 U.S.C. § 1343, and their applicable regulations described in this Complaint.

16.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this District.

## FACTUAL ALLEGATIONS

17.     SLATE is an established law firm, headquartered in San Diego, California.

18.     3RDAVE NEWS is a property development and management company doing business in San Diego, California.

19.     TRANSCRIPT is a member of 3RDAVE NEWS and is a property development and management company doing business in San Diego, California.

20.     3RDAVE NEWS by and through its member TRANSCRIPT, owns and manages the commercial property known as the Foley Center located at 2131 Third Avenue, San Diego California, 92101, Assessor's Parcel No. 533-201-08 ("Subject Property").

21.     GOODSON is an agent of 3RDAVE NEWS who develops and manages the Subject Property known as the Foley Center located at 2131 Third Avenue, San Diego California, 92101, Assessor's Parcel No. 533-201-08 ("Property").

22.     CRBE, INC, a Delaware Corporation; at all relevant times here in represented the commercial Subject Property known as the Foley Center located at

2131 Third Avenue, San Diego California, 92101, Assessor's Parcel No. 533-201-08

23.    CAMILLE DOAN, individually, and as an employee of CBRE, INC is a commercial real estate agent representing the subject property by and through CBRE, INC. and as an agent of 3RDAVE NEWS, FOLEY AND GOODSON

24.    In or around October 2019, Plaintiff by and through her commercial real estate agents communicated with Defendants about leasing a commercial space for a law firm.

25.    Defendants explained to Plaintiff that they had a location available, the Subject Property, but that it was not ready for occupancy. Defendants advised that the Subject Property would not be ready until March 2020.

26.    Plaintiff refused Defendants' offer of a space in the Subject Property because it did not adhere to Plaintiff's timeline as Plaintiff needed a space starting January 1, 2020.

27.    Given the Subject Property's unavailability, on or around October 2019, Plaintiff proceeded to move forward with another space in a high-rise in San Diego with a different landlord, where Plaintiff would occupy a similar amount of space.

28.    Plaintiff turned down any offer made or countered by 3RDAVE NEWS due to the timeline, which was not workable for plaintiff.

29.   On or around November 15, 2019, Defendants began actively soliciting Plaintiff in an attempt to lease out the Subject Property.

30.   Defendants oddly circumvented Plaintiff's leasing agents, DOAN and GOODSON and reached out directly to Plaintiff.

31.   DOAN called Plaintiff's office directly and Plaintiff's work cell phone directly

32.   GOODSON also called Plaintiff's office directly

33.   Doan tried to manipulate Plaintiff into agreeing to enter a lease at the Subject Property by advising Plaintiff that the only other office leasing option was Doug Manchester in the Manchester building. Doan stated that Doug Manchester "liked trump" and "had scandals in the news", hoping that the negative facts about the Manchester building would entice Plaintiff, led by a female business owner, to sign a lease with the Subject Property.

34.   Defendants also stated that they could expedite the timeline and make the Subject Property available by January 1, 2020, if Plaintiff entered into a lease agreement.

35.   Defendants did not inform Plaintiff of their ethical obligation to go through Plaintiff's agent to set up terms and to offer new details on a lease.

36.   On December 2, 2019, Plaintiff received an email from her commercial real estate brokers stating: "I understand you have re-engaged in discussions with DOAN for leasing 2131 Third Avenue.  Third is a great building,

and as we've said from the beginning, they are aggressive and really want to make a deal… the owner is accessible and involved."

37.   Defendants offered to make part of the leased space available by January 15, 2020, if Plaintiff agreed to sign the lease by December 15, 2020 with a personal guaranty.

38.   Defendants knew time was of the essence because Plaintiff communicated to the leasing agents, Doan and Goodson, that Plaintiff had to vacate its current office space in a high-rise building on December 31, 2019.

39.   Upon information and believe, Defendants knew at the time of drafting and signing of the lease agreement that a move-in date of January 15, 2020, was impossible.

40.   Nonetheless, Defendants promised to Plaintiff that all buildouts and structural issues would be completed shortly after execution of the lease agreement.

41.   Plaintiff's predecessor firm, DuFord Law, signed the Office Lease in or around late December 2019 or early December 2020.

42.   Plaintiff paid Defendants the initial security deposit of $36,425.00: $15,000 on January 17, 2020, and $21,425.00 on January 22, 2020.

43.   In January 2020, Defendants informed Plaintiff that Defendants were unable to secure the required construction permits and indefinitely postponed the move in date.

44.    When DuFord Law was no longer an operating entity, Plaintiff SLATE made an asset purchase of DuFord Law's book of business and property.

45.    One of the assets that got transferred to Plaintiff was the right to the Office Lease for the Subject Property, assuming such an agreement could be reached with Defendants.

46.    Plaintiff signed a new lease with Defendants, with Plaintiff listed as the tenant, on February 14, 2020, with the understanding at that point that the Subject Property would not be ready for occupancy until May 1, 2020. True and correct copy of lease is attached hereto and incorporated by reference as **Exhibit A.**

47.    Plaintiff again communicated to Defendants via phone and other means that "time was of the essence."

48.    Plaintiff paid additional security deposits of $10,000.00 on February 11, 2020, and $26,425.00 on February 21, 2020.

49.    However, on March 9, 2020, prior to providing additional monies, first month rent, Plaintiff reached out to GOODSON and DOAN requesting affirm that there was a certificate of occupancy for the building prior to handing over additional security deposit.

50.    Plaintiff had expressed their concern regarding the same to DOAN throughout February.

**COMPLAINT FOR DAMAGES**

51.     On March 9, 2020, GOODSON assured Plaintiff that they had occupancy permits. True and correct copies of text messages are attached hereto and incorporated by reference as **Exhibit B.**

52.     At that time, March 9, 2020, GOODSON knew the building did not have a certificate of occupancy.

53.     In fact, until at least late August, the building had no means of egress system at all;

54.     Until late August no fire protection or fire alarm systems at all and no fire access and fire hydrants;

55.     Additionally, at least until late august no Mechanical, electrical and plumbing systems that were approved.

56.     Section 3(a) of the Office Lease reads in part and is italicized and bolded for emphasis:

> The term ("Term") of this Lease shall commence on the Commencement Date and, unless sooner terminated as later provided, shall end on the Termination Date. ***Landlord has undertaken in this Lease to make alterations to the Premises ("Initial Tenant Improvements") before the Commencement Date and the alterations shall be substantially completed before the Commencement Date***. Landlord, to the best of Landlord's ability and on the condition Tenant provides final space plans in a timely manner, shall construct space on

the first floor to accommodate Tenant's administrative staff and some meeting spaces as soon as possible.

If Landlord, for any reason, cannot deliver all three spaces of the Premises to Tenant on the Commencement Date, this Lease shall not be void or voidable, nor shall Landlord be liable to Tenant for any loss or damage resulting from non-delivery, but in that event rental shall be waived for the space(s) that are not delivered to Tenant for the period between the Commencement Date and the time when Landlord delivers each space of the Premises to Tenant. A delay in delivery of all three spaces of the Premises shall cause an equal extension to the Term of this Lease up to a maximum of six (6) months. ***Tenant agrees to use its best efforts to fully cooperate with Landlord's efforts to ensure Landlord delivers all three spaces to Tenant by the Commencement Date or as soon as possible thereafter. In the event the Premises have not been delivered within nine (9) months of the execution of this Lease and Tenant has not caused any of such delay, Tenant shall have the option to give written notice to Landlord (and any mortgagees who have provided Tenant with written notice) specifying Tenant's intent to terminate this Lease if the Premises have not been delivered to Tenant within thirty (30) days of Landlord's receipt of such written notice.*** If Landlord delivers the

Premises within such thirty (30) day period, then Tenant shall not be entitled to terminate this Lease under this provision.

*In the event that the tenant improvement plans are not approved by the City of San Diego within 60 business days of final approval by Tenant, and if Landlord fails to deliver the suite to Tenant on the first floor north of the lobby within 60 business days thereafter, then Tenant shall have the option to give written notice to Landlord (and any mortgagees who have provided Tenant with written notice) specifying Tenant's intent to terminate this Lease if the suite on the first floor north of the lobby has not been delivered to Tenant within thirty (30) days of Landlord's receipt of such written notice.* If Landlord delivers the suite on the first floor north of the lobby within such thirty (30) day period, then Tenant shall not be entitled to terminate this Lease under this provision. (Emphasis added.)

57.     With Defendants' approval, Plaintiff selected Mr. John R. Watkins ("Watkins") of J&J Works Enterprises to inspect the Subject Property and offer a bid for the buildout contract. A true and correct copy of the text messages between Plaintiff and Defendants regarding Watkins is attached hereto and incorporated by reference as **Exhibit C.**

58.     Plaintiff knew WATKINS would move as fast as possible and push the project along.

59.     WATKINS has been highly regarded by others in the community and Plaintiff knew WATKINS would push to move things along, as they had mutual business acquiesce.

60.     Plaintiff actively engaged in the buildout process with Watkins and Plaintiff's designer, participating in multiple in-person meetings in December, January, February, and March 2020, and exchanged messages and calls in April.

61.     Beginning to get concerned, in April, Plaintiff began to push Watkins to provide more information.

62.     WATKINS was getting no help from GOODSON on getting plans.

63.     On April 17, 2020, Watkins provided an update to Plaintiff stating all the work and calls he was making in an attempt to push things along: Attached hereto and incorporated by reference as **Exhibit D.**

64.     However, WATKINS also noted he still did not have an approved set of Plans from GOODSON and was finding it difficult to get answers or a hold of him.

65.     During a walkthrough of the Subject Property with WATKINS, Defendants made specific guarantees regarding repairing the infrastructure of the Subject Property, namely a leak under the first-floor sidewalk, and obtaining permits in order to complete necessary buildouts.

66.     Watkins began working on the scope of work and selecting finishes with the assistance of Plaintiff's designer and Plaintiff.

67.     In March 2020, the United States began to feel the effects of the COVID-19 pandemic.

68.     With shelter-in-place orders issued by the State of California, the meetings regarding the buildout were conducted by phone, and walkthroughs were performed while all individuals present were masked. Ms. DuFord even made herself available on weekends to participate in the buildout process despite having sole custody of three young children.

69.     Michael Weiner ("Weiner"), a law Partner of Plaintiff, did the same and took a very active role in engaging Watkins to work on the project, pushing it along and scheduling deadlines.

70.     During one of Watkins's site visits, Watkins identified a major flooding issue stemming from the sidewalks in front of the building and leaking into the first floor of the Subject Property.

71.     Watkins, a contractor of over thirty years, told Plaintiff that the first floor/level's structure was flawed in such a way that every time it rained, water would come into the first floor.

72.     Watkins advised that the rain issue happened three times when he was onsite, and Defendants claim they attempted to repair the issue; however, water continued to come in each time it rained, creating perpetual moisture damage.

73.     Specifically, Watkins detected moisture from the concrete slabs in the building.

74.     Watkins engaged an independent company to test the moisture content in the concrete slabs. The test results were "off the charts," showing excessive amounts of moisture, requiring the slabs to be sealed.

75.     Watkins advised there was no way to start construction on the first floor due to the condition of the Subject Property.

76.     Watkins also noticed the wall on the first floor was cut up all around the perimeter two (2) to four (4) feet, which Goodson explained was intended to enable electrical work for a new tenant.  There was no sign or indication that the Subject Property was expecting a new tenant.

77.     Watkins determined, however, that such cuts would not be utilized for electrical wiring but likely were done to help dry out the building. True and correct copies of the pictures of the cuts is attached hereto as **Exhibit E.**

78.     During the inspection, Watkins also discovered that the Subject Property contained fire hazards from its removal of the ingress and egress to the fire escape.

79.     Up to this point, Defendants had still not secured any permits for any of the construction buildouts.

80.     There were at least four different permit inspectors that came to inspect the Subject Property for the issuance of a permit, and there was even a fifth inspection scheduled, yet no permits were ever obtained by Defendants.

81.     Watkins contacted Defendants to request the permit to begin construction on the Subject Property. In response, Defendants told Watkins to start work without one.

82.     Watkins did not begin work and instead waited for Defendants to obtain a permit.

83.     Plaintiff repeatedly tried contacting Goodson to get an update on the progress and to see whether permits were obtained, to no avail.

84.     While awaiting a response from Defendants with regards to the permit, Plaintiff discovered that there were multiple contractors all bidding on different floor plans provided by Defendants and none of which were approved by Plaintiff.

85.     The Commencement Date of the Office Lease, *i.e.*, the date the Subject Property was expected to be ready for occupancy, was estimated to be on or around May 1, 2020, as outlined in the definitions of the Office Lease, as a compromise from the first lease draft for Defendants.

86.     The Office Lease provides: "'Commencement Date' means the date the Initial Tenant Improvements (see Sections 3(a) and 9(c) of this Lease) are substantial[ly] completed, estimated to be on or around May 1, 2020."

87.     In May 2020, Watkins discovered water in the elevator shaft, which would prevent the buildout or occupancy.

88.     In fact, it appeared that after May 1, 2020, parts of the structure had been taken down, specifically a metal buildout that would need to be put back, again with no notice or explanation to Watkins or Plaintiff.

89.     Despite the flaws, Watkins never stopped attempting to contact Goodson regarding the building issues.

90.     Watkins later found out there was a third set of plans, which he never received.

91.     All contractors were working off different sets of plans.

92.     As recently as September 1, 2020, Plaintiff visited the Subject Property to inspect its progress and noticed that the fire escape had still not been installed and the inner walls were still damaged. It appears as if no work has commenced on the Subject Property whatsoever, and multiple vagrants were inhabiting the Subject Property.

93.     These transient inhabitants admitted they were attempting to steal Plaintiff's mail on a regular basis.

94.     Defendants knew that Plaintiff was in immediate need of an office space, and the Parties intended to account for this concern with the inclusion of a Time is of the Essence clause at Section 36 of the Office Lease, which reads: "Time is of the essence in this Lease and all of its provisions."

95.     Plaintiff had to rent out another office space in the interim while it looked for a permanent location, as Defendants failed to comply with the terms of the Office Lease it had with Plaintiff.

96.     Defendants were aware this cost was being incurred.

97.     Defendant accepted the terms of the aforementioned Office Lease.

98.     Defendant began to realize as this information from WATKINS was coming in through the end of April and May that GOODSON may not have been telling the truth to Plaintiff regarding the status of the Building.

99.     On May 4, 2020, Plaintiff did a walk-through of the building herself by WATKINS and their Commercial Real Estate Brokers and discovered the issues stated above in addition to other issues which are captured on both video and photos attached hereto as **Exhibit F.**

100.    The San Diego permitting office did not cease operations during COVID-19 nor was Landlord prevented from submitting necessary permits to the San Diego Permits, Approvals and Inspections Department Office.

101.    In June and July, Plaintiff looked into the permitting issues with the building and began to discover the following:

    a.   On July 29, 2020: "Building Electrical, plumbing and mechanical permits for interior remodel to an existing **three-story** vacant unit for new office space. Proposed work to the first & second floors

for new walls, doors, ceiling work, fixtures and associated **electrical and mechanical work.**

b.  Notably no approvals at all had been done for electrical work and payment was not made on the permit request.

c.  On July 29, 2020, the plumbing permit stated plumbing work for an interior remodel to an existing **three-story** vacant unit for new office space. Work associated with an interior remodel to the first & second floors.

d.  On May 26, 2020, the city noted "No inspections will be performed until the required deferred Fire Suppression and/or Fire Alarm documents have been submitted, and no close-in inspections will be performed until the above referenced submittals have been approved." **(Exhibit G).**

e.  Additionally, no plans have ever been submitted to the city. attached hereto as **Exhibit H.**

102.  Most concerning of all of these issues is the lack of the fire suppression and alarm documents that were not submitted which stopped any issuance of further permits and would have prevented any occupancy permits from being issued.

103.  On June 30, 2020 and July 3, 2020, Defendants and Plaintiff exchanged emails. A true and correct copy of the emails are attached hereto and incorporated by reference as **Exhibit I.**

104.   The June 30, 2020, email from 3RDAVE NEWS's counsel stated: "I represent Third Avenews, LLC, the landlord of the premises you leased on behalf of Slate Law Group at 2131 Third Ave., San Diego.  You also personally guaranteed the obligations of the tenant under the Lease. The landlord has been trying to reach you for quite some time and I also left you a phone message last week.  But, you have not returned any of these calls, emails, or texts.  Therefore, I've enclosed a Notice of Default which is being served upon you under the terms of your lease.  But contact me or Randy Goodson (858-692-6262) at your earliest convenience so we can remedy this breach."

105.   Defendants failed to provide proper Notice of Default under the Office Lease. Pursuant to the Office Lease, a formal letter should have been sent in order to properly effectuate a notice pursuant to the Lease. A true and correct copy of the Notice of Default is attached hereto and incorporated by reference as **Exhibit J.**

106.   An email did not suffice as notice of default to cure.

107.   The July 3, 2020, email from Plaintiff advised Defendant as follows: "We have retained counsel on the matter, there are some large issues which have been found by our contractor, lease reps and attorney. I will send you our attorney information after the long weekend -- have a good fourth of July."

108.   On July 17, Plaintiff received the following text from DOAN a  true and correct copy of the texts are attached hereto and incorporated by reference as **Exhibit K.**

a. "They are still prepared to move forward per the following: Slate Law to pay original first month's rent. Start paying rent when construction is done / you move in. $10 more per SF in Tenant Improvements to cover the overage. 30 day window during lease term to complete seismic improvements required by UCSD medical. This would include cutting dry wall and welding the steel."

109.   In this message DOAN, an agent of the other Defendants, herself, admits there are issues with the building and even tries to get additional monies from Plaintiff.

110.   Notably, this was on July 17 2020  is thirty (88) days after Defendants were to provide the space to Defendants.

111.   On August 5, 2020, following up on this text, Ms. DuFord, after attempting to call Mr. Goodson multiple times, emailed him advising him that every time she called him his "mailbox was full."

112.   Mr. Goodson denied such, to which, Mr. Weiner, a witness to the calls, promptly emailed he watched and listened as Ms. DuFord's calls went directly to voicemail multiple times.

113.   Unable to get a hold of Mr. Goodson on August 5, 2020, Plaintiff's counsel began to prepare a formal letter to properly serve under the Office Lease.

114.   Additionally, while still not able to reach Mr. Goodson by phone, Plaintiff advised Defendants via email on August 5, 2020, ***stating again*** that there were serious issues with the structure and ability to occupy the Subject Property. A true and correct copy of the email is attached hereto and incorporated by reference as **Exhibit L.**

115.   On August 10, 2020, Defendants' attorney sent Ms. DuFord a Notice of Termination of the Lease attached to an email.

116.   On August 10, 2020 a Notice of Termination via email sent to Plaintiff.

117.   On the same day in reply to the email of notice, Mr. Goodson finally replied: "When would you like to talk?  In addition to the issue of the 2131 3rd Ave lease (fyi your TI's plans are fully approved by the City) we need to address your lease for the storage of your office equipment at 5th Ave. If there is any potential for a constructive relationship, then we are ready to listen and engage." .

118.   A notice followed in the mail on August 12, 2020. A true and correct copy of the Notice of Termination is attached hereto and incorporated by reference as **Exhibit M.**

119.   This Notice was sent properly; however, it appeared to ignore that Plaintiff had issues with "cooperating" due to Defendants' selected contractor finding major issues with the structure of the building and that the notice to cure was not properly sent.

120.    Defendants seemed to have completely failed to address the repeated statements that the building had major structural and other issues.

121.    It is particularly telling that Plaintiff received the Notice of Termination of the Office Lease in the mail on August 12, 2020, just three (3) days before the landlord would have been in breach of the Office Lease for failure to provide a space to occupy

### Facts Surrounding Temporary  Space

122.    On August 13, 2020 Defendant Goodson's daughter, the manager and analyst of Foley Development emailed Plaintiff regarding other interested parties in the storage not and inquired if Plaintiff was "able to meet tomorrow for [her] to collect the rent" A true and correct copy of this email is attached hereto and incorporated by reference as **Exhibit N.**

123.    Plaintiff did not see this email in her inbox until later in September did a search of the name "Goodson" in her inbox.

124.    On September 23, 2020, Plaintiff then received a "Notice of Abandonment" addressed to DuFord Law, A California Corporation. DuFord Law, as it was in 2019, was an LLP.

125.    Ms. DuFord advised Defendant's counsel via phone that DuFord Law LLP, was no longer an operating entity and would be dissolved on or before the end of 2020.

**COMPLAINT FOR DAMAGES**

24

126.    Ms. DuFord advised she was not the agent of service for DuFord Law, and counsel should contact the agent of service which could be found with the Sectary of State. She also offered to provide contact information for who she believed it to be.

127.    Ms. DuFord eventually found out the notice was regarding a lease signed by Kendra Wilbert in the name of DuFord Law, California Corporation

128.    This lease terms and emails are attached hereto and incorporated by reference as **Exhibit O.**  and state:

   a.  "This lease will be with DuFord Law but the lease payment will be paid by Third AveNews,LLC to keep the property's books separate"

129.    No notice of termination of this lease was ever provided to Plaintiff, Ms. Wilbur or the agent for service of process in DuFord for this lease.

130.    On September 16, 2020, Plaintiff advised Defendants that the property did belong to Plaintiff and while they had no obligation to do so, they were working as fast as they could to get the furniture out of the space in an attempt to cooperate and move on.

131.    On September 21, 2020 the property was removed from 1811 5th Ave, San Diego, CA 92101 without permission from Plaintiff two days prior from the date notes.

132.    Additionally, the Notice referred to "section 1951.35 of the Civil Code" and "Section 1951.1" and provided a list of properties. A true and correct copy of the Notice is attached hereto and incorporated by reference as **Exhibit P.**

133.    These code sections apply to property valued at less than $2,500.00. The property list attached to the Notice listed properties valued at beyond at least $15,000.00 (accounting almost 85% depreciation, above what would normally be the standard depreciation).

134.    The property listed contains at minimum "12 desks" and "12 desk chairs" each purchased for approximately

135.    Plaintiff advised Defendants this was a crime and called the police on September 24, 2020 and proceeded to make a report.

136.    On September 24, 2020, Employees of SLATE attempted to access 1811 5th Ave, the storage unit and found the key provided no longer worked and the space was empty by looking through a window.

137.    The owner of the neighboring store stated that individuals had been on the premise at least 2-3 days prior with moving trucks to remove property from the space

138.    The owner of the neighboring store stated they witnessed office tables and chairs being removed.

139.    Plaintiff was not given notice nor had permitted this relocation of property.

140.   Plaintiff was told property was at 1245 5th Ave, San Diego, CA 92101 by Kirk Miller on September 24, 2020.

141.   Employees of SLATE went to the address and were not able to see the property from the window.

142.   The address itself is an active construction site and is not a storage unit.  A true and correct copy of pictures of the premise are attached hereto and incorporated by reference as **Exhibit Q.**

143.   On September 27, 2020, Plaintiff communicated to the police once again and filed an official report.

144.   On October 7, 2020, Plaintiff requested for a mover to be granted access to view the furniture located at 1811 5th Ave.

145.   Plaintiff was denied this request by Kirk Miller who demanded two thousand nine hundred and seventy dollars with zero cents in storage fees ($2,970.00) in order to receive their rightful property back. A true and correct copy of the Notice is attached hereto and incorporated by reference as **Exhibit R.**

146.   On October 8, 2020, Employees of SLATE, again, went to 1245 5th Ave and visibly saw their items from outside of the premise. A true and correct copy declaration is attached hereto and incorporated by reference as **Exhibit S.**

147.   SLATE requested a police officers be present for a peaceful exchange and informed Defendant GOODSON and their counsel of the same.

148.   Items were in a corner, exposed to the preexisting conditions of the construction site and had no reliable protection.

149.   Plaintiff's was unable, once again, to be granted access to their belongings.

150.   As a result, Plaintiff incurred the cost of movers on October 8, 2020 that were not able to move the belongings, and to this date, is not in receipt of their rightfully owned property.

151.   Defendants used Plaintiff's need for a larger space to pressure them into signing, knowing the numerous structural flaws and other problems that existed with the Subject Property.

152.   The Notice made the obvious false statement that tenants were under rent default, as there was no rent.

153.   Plaintiff has been damaged by Defendants' breach of the Office Lease and violation of its property rights.

154.   To date, more than seven months have passed since executing the Office Lease on February 14, 2020, and more than four months have passed since the Subject Property was estimated to be ready according to the Commencement Date of May 1, 2020.

155.   To date, the Subject Property remains uninhabitable for any tenants and no occupancy permit has granted at the time of this filing.

# FIRST CAUSE OF ACTION

## Breach of Contract – Commercial Lease Agreement

## (Against Defendant & DOES 1 to 20)

156.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

157.   On February 14, 2020, in the City and County of San Diego, State of California, Defendants and Plaintiff entered into a commercial lease for Plaintiff to rent and occupy The Subject Property.**(Exhibit E).**

158.   At all times relevant herein, Plaintiff performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Office Lease.

159.   On information and belief, SLATE hereby allege that Defendants breached the Office Lease at some point after execution of the Office Lease, by:

      a.  failing to make the Initial Tenant Improvements;

      b.  failing to obtain permits; and

      c.  failing to deliver The Subject Property by, or at a reasonable time after, the Commencement Date.

160.   As a result of the forgoing breaches of contract, Plaintiff has been damaged in an amount equal to the deposit and first months of rent for The Subject

Property, together with prejudgment interest thereon at the lawful rate since the date of breach, according to proof at trial.

161.   Plaintiff, as the prevailing party per the contract, are entitled to reasonable attorneys' fees along with costs and expenses. Cal. Civ. Code § 1717.

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against Defendant & Does 1 To 20)

162.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

163.   Implied in every contract is a covenant of good faith and fair dealing. Through the use of fraud and deceit, Defendants deprived Plaintiff of the benefits of The Subject Property for which Plaintiff was entitled to and reasonably expected under the Office Lease.

164.   The   Defendants   made   numerous   representations   that   the improvements would be complete, that permits would be obtained, and that delivery of The Subject Property would be forthcoming.

165.   These   representations   were   made   to   Plaintiff   verbally   during walkthroughs of The Subject Property prior to the signing the Office Lease.

166.   The same representations were also memorialized in the February 14, 2020 Office Lease.

167.   Defendants have frustrated the purpose of the Office Lease by accepting Plaintiff's deposits and failing to make any progress on turning The Subject Property over to Plaintiff.

168.   As a result of the breaches of the implied covenant of good faith and fair dealing implied in the Office Lease, Plaintiff has suffered incidental and consequential damages according to proof at trial.

169.   Plaintiff, as the prevailing party per the contract, are entitled to reasonable attorneys' fees along with costs and expenses. Cal. Civ. Code § 1717.

## THIRD CAUSE OF ACTION

**Breach of Business & Professions Code § 17200, *Et Seq.***

**(Against Defendant & DOES 1 to 20)**

170.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

171.   California Business and Professions Code § 17200, *et seq.* ("Unfair Competition Law" or "UCL") prohibits any unlawful, unfair, or fraudulent business act or practice.

172.   Defendants have violated the UCL be engaging in unlawful, unfair, and fraudulent business acts or practices by their breach of the Office Lease contract.

173.    The Defendant's unlawful acts, as described above and below, caused substantial harm to Plaintiff.

174.    As a direct and proximate cause of the unlawful, acts and practices of the Defendants, Plaintiff has suffered, and continues to suffer damages in the form of lost profits, expenses, and other damages in an amount to be determined according to proof at trial.

### FOURTH CAUSE OF ACTION

**Negligent Misrepresentation**

**(Against Defendant & DOES 1 to 20)**

175.    Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

176.    At all times, Defendants, JACQUET, FOLEY, and GOODSON, were acting within the scope of their engagement with 3RD AVENEWS and 3RD AVE DAILY TRANSCRIPT and in making the above referenced misrepresentations alleged herein were acting within the scope of said agency and with the permission and consent of the principals.

177.    Defendants FOLEY and GOODSON each represented to Plaintiff that Initial Tenant Improvements would be made, permits would be obtained for a buildout, and that delivery of The Subject Property would be on, or at a time reasonably after, May 1, 2020.

178.   Defendants owed Plaintiff a duty of good faith and fair dealing as well as a duty to disclose that no permits were obtained, instead of indicating that permits would be forthcoming.

179.   At the time that any representations were made by Defendants to Plaintiff, Defendants had no reasonable grounds for believing that the above referenced representations were true when they made them.

180.   Said representations were made negligently and without sufficient knowledge to make them. Defendants were aware, or reasonably should have been aware, that they had insufficient information or knowledge to make such representations. Nonetheless, said representations were made to Plaintiff. As a result, Defendants committed tortious acts of negligent misrepresentation by breaching said duty.

181.   Plaintiff reasonably relied on the above referenced representations to their detriment as described herein, and further reasonably relied on Defendants to disclose to them the true facts relating to the permits necessary for the Initial Tenant Improvements and ultimately the delivery of The Subject Property.

182.   In committing said negligent misrepresentations, Defendants are guilty of actual fraud and actual malice.

183.   As a direct and proximate cause of the unlawful, acts and practices of the Defendants, Plaintiff has suffered, and continues to suffer damages in the form

of lost profits, expenses, and other damages in an amount to be determined according to proof at trial.

184.   Furthermore, Defendants' conduct, as described herein, was malicious, fraudulent and/or oppressive, as defined in Civil Code § 3294, and entitle Plaintiff to punitive damages by way of example and as a means of punishing the Defendants for engaging in such wrongful, despicable, and reprehensible conduct. The conduct of the Defendants was done with knowledge of the wrongdoing and ratification thereof.

## FIFTH CAUSE OF ACTION

### Fraudulent Misrepresentation

### (Against Defendant & DOES 1 to 20)

185.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

186.   At all times, Defendants, JACQUET, FOLEY, and GOODSON, were acting within the scope of their engagement with 3RD AVENEWS and 3RD AVE DAILY TRANSCRIPT and in making the above referenced misrepresentations alleged herein were acting within the scope of said agency and with the permission and consent of the principals.

187.   Defendants FOLEY and GOODSON each represented to Plaintiff that Initial Tenant Improvement would be made, permits would be obtained for a

buildout, and that delivery of The Subject Property would be on, or at a time reasonably after, May 1, 2020.

188.   Defendants owed Plaintiff a duty of good faith and fair dealing as well as a duty to disclose that no permits were obtained, instead of indicating that permits would be forthcoming.

189.   The representations made by Defendants to Plaintiff, as described herein, were intentionally made, with knowledge that such representations, as alleged herein, were false when they were made, and/or such representations were recklessly made by Defendants.

190.   Plaintiff reasonably relied on the above referenced representations to its detriment as described herein, by agreeing to and executing the Office Lease.

191.   These representations were important and material; they were also false and/or reckless when made.

192.   Accordingly, Defendants knew that the above referenced representations were false when made. Alternatively, Defendants representations were made recklessly and without regard for their truth, and/or were made unreasonably when the Defendants should have known, based upon a reasonable inquiry, that they were untrue. That is, the true facts were concealed intentionally or in reckless disregard for their truth or when the Defendants knew, or should have known, that Plaintiff was unaware of the true facts regarding the subject of the misrepresentations and concealments.

193.   Defendants intended that Plaintiff rely on these representations and that at the time these representations were made that they would influence Plaintiff to take the actions described above and enter into the aforementioned Office Lease.

194.   Plaintiff did reasonably rely on these representations as they were made and communicated by Defendants in connection with inquiries into leasing The Subject Property.

195.   In committing said fraudulent misrepresentations, Defendants are guilty of actual fraud and actual malice.

196.   As a direct and proximate cause of the unlawful, acts and practices of the Defendants, Plaintiff has suffered, and continues to suffer damages in the form of lost profits, expenses, and other damages in an amount to be determined according to proof at trial.

197.   Furthermore, Defendants' conduct, as described herein, was malicious, fraudulent and/or oppressive, as defined in Civil Code § 3294, and entitle Plaintiff to punitive damages by way of example and as a means of punishing the Defendants for engaging in such wrongful, despicable, and reprehensible conduct. The conduct of the Defendants was done with knowledge of the wrongdoing and ratification thereof.

## SIXTH CAUSE OF ACTION

### Concealment

### (Against Defendant & DOES 1 to 20)

198.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

199.   At all times, Defendants, JACQUET, FOLEY, and GOODSON, were acting within the scope of their engagement with 3RD AVENEWS and 3RD AVE DAILY TRANSCRIPT in transacting business on and managing The Subject Property.

200.   In acting as agents of 3RD AVENEWS and 3RD AVE DAILY TRANSCRIPT, JACQUET, FOLEY, and GOODSON intentionally failed to disclose material facts relevant to Plaintiff's interests in The Subject Property, namely that The Building's leaking problem continued to persist, that permits were never obtained, and that delivery of The Subject Property would not be forthcoming. These facts were known only to Defendants and could not have been ascertained by Plaintiff.

201.   At all times relevant herein, Plaintiff did not know about the ongoing flooding issues or the lack of permits, which was holding up the buildout of The Subject Property.

202.   Had Plaintiff been aware of the facts of Defendants' claims, Plaintiff would have taken steps to mitigate their losses.

203.   Defendants' concealment was a substantial factor in causing the Plaintiff's harm.

204.   As a direct and proximate cause of the unlawful, acts and practices of the Defendants, Plaintiff has suffered, and continues to suffer damages in the form of lost profits, expenses, and other damages in an amount to be determined according to proof at trial.

205.   Furthermore, Defendants' conduct, as described herein, was malicious, fraudulent and/or oppressive, as defined in Civil Code § 3294, and entitle Plaintiff to punitive damages by way of example and as a means of punishing the Defendants for engaging in such wrongful, despicable, and reprehensible conduct. The conduct of the Defendants was done with knowledge of the wrongdoing and ratification thereof.

## SEVENTH CAUSE OF ACTION

### Negligence

### (Against Defendant & DOES 1 to 20)

206.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

207.   At all times relevant herein, in acting as Lessors of The Subject Property, the Defendants had a duty to exercise reasonable care, skill, and ordinary diligence in readying The Subject Property for delivery to the Plaintiff.

208.   At all times relevant herein, Defendants breached their duties owed to Plaintiff by, among other things, failing to make any Initial Tenant Improvements,

and by failing to deliver The Subject Property by, or reasonably after, the Commencement Date.

209.   As a direct and legal result of the negligence of Defendants, Plaintiff have been damaged in an amount according to proof at trial.

## EIGHTH CAUSE OF ACTION

### Fraud

### (Against Defendant & DOES 1 to 20)

210.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

211.   Plaintiff are informed and believe and thereon allege that Defendants did the acts herein alleged with the intent to deceive and defraud Defendants.

212.   Plaintiff are informed and believe and thereon allege that Defendants did these acts with the intent to induce reliance on Plaintiff to enter into the Office Lease agreement.

213.   Plaintiff in fact placed confidence and reliance in Defendants on February 14, 2020, when they entered into the Office Lease agreement with Defendants.

214.   As a direct and proximate cause of the fraud of the Defendants as alleged herein, Plaintiff have suffered, and continue to suffer damages in form of

lost profits, expenses, and other damages in an amount to be determined according to proof at trial.

215.   Furthermore, Defendants' conduct, as described herein, was malicious, fraudulent and/or oppressive, as defined in Civil Code § 3294, and entitle Plaintiff to punitive damages by way of example and as a means of punishing the Defendants for engaging in such wrongful, despicable, and reprehensible conduct. The conduct of the Defendants was done with knowledge of the wrongdoing and ratification thereof.

## NINTH CAUSE OF ACTION

### Rescission Based on Negligence

### (Against Defendant & DOES 1 to 20)

216.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

217.   On February 14, 2020, when the Plaintiff and Defendants entered into the Office Lease agreement, the Defendants knew that the Plaintiff were leasing The Subject Property with the intent of developing the site in order to be used as a law firm.

218.   At all times the Office Lease was executed, Defendants misrepresented the fact that they had permits to develop the site and that delivery of The Subject Property would be forthcoming.

219.   Defendants made these representations with the intent to have Plaintiff enter into the Office Lease agreement.

220.   Plaintiff are informed and believe, and thereon allege, that at the time Defendants made these representations and/or concealed these material facts, Plaintiff were ignorant of the fact that the Defendants had not yet obtained any permits for the buildout.

221.   In justifiable reliance upon Defendants' misrepresentations, Plaintiff agreed to lease The Subject Property.

222.   Had Plaintiff known the true facts, Plaintiff would not have entered into the Office Lease agreement.

223.   Plaintiff agreed to lease The Subject Property from Defendants on the understanding and reliance that the Defendants would obtain the necessary permits for the buildout and that The Subject Property would be delivered in May.

224.   As a result of the negligent concealment and/or suppression of facts by Defendants, Plaintiff will be substantially damaged should the Office Lease agreement not be rescinded because it will severely impact Plaintiff's obligations.

225.   Plaintiff hereby request rescission of the Office Lease agreement and seek restitution of all consideration paid to Defendants in an amount to be determined according to proof at trial.

## TENTH CAUSE OF ACTION

### Rescission Based on Fraud

**(Against Defendant & DOES 1 to 20)**

226.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

227.   On February 14, 2020, when the Plaintiff and Defendants entered into the Office Lease agreement, the Defendants knew that the Plaintiff were leasing The Subject Property with the intent of developing the site as a law firm.

228.   At all times the Office Lease was executed, Defendants represented that they had permits to develop the site and that Delivery would be forthcoming.

229.   Defendants represented these facts with the intent to induce Plaintiff to enter into the Office Lease agreement.

230.   Plaintiff are informed and believe, and thereon allege, that at the time Defendants made these representations and/or concealed these material facts, Plaintiff were ignorant of the fact that the Defendants had not yet obtained any permits for the buildout.

231.   At the time Defendants concealed these facts, Defendants knew that no permits had been obtained for any buildouts on The Subject Property.

232.   Furthermore, it follows that because Defendants knew no permits were obtained, Delivery to Plaintiff would not be possible.

233.   By misrepresenting and/or concealing material facts regarding the delivery of The Subject Property, Defendants made it nearly impossible for Plaintiff to ascertain the truth.

234.   At the time Defendants made these misrepresentations and/or concealed these facts, and at the time Plaintiff took the actions alleged herein, including, without limitation, entering into the Office Lease agreement, Plaintiff were ignorant of the fact that no permits were obtained for The Subject Property and delivery of the Subject Property would not be ready many months after the estimated, May 1, 2020, Commencement Date.

235.   In justifiable reliance upon Defendants' misrepresentations, Plaintiff agreed to lease The Subject Property.

236.   Had Plaintiff known of the true facts, Plaintiff would not have entered into the Office Lease agreement.

237.   Plaintiff agreed to lease The Subject Property from Defendants on the understanding that the Defendants would obtain the necessary permits for the buildout and that The Subject Property would be delivered in May.

238.   As a result of the concealment and/or suppression of facts by Defendants, Plaintiff will be substantially damaged should the Office Lease agreement not be rescinded because it will severely impact Plaintiff obligations.

239.   Plaintiff hereby request rescission of the Office Lease agreement and seek restitution of all consideration paid to Defendants in an amount to be determined according to proof at trial.

## ELEVENTH CAUSE OF ACTION

### Cancellation of Instrument (Civil Code § 3412)

### (Against Defendant & DOES 1 to 20)

240.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

241.   By reason of the fraud conducted by Defendants, the consideration paid by Plaintiff to Defendants and continuing obligations to pay rent have become entirely void and the covenants, terms, and conditions of the Office Lease are void, subject to rescission, or otherwise invalid.

242.   Plaintiff are under reasonable apprehension that the covenants and obligations contained in the Office Lease may cause serious injury if left outstanding. Thus, Plaintiff are entitled to cancellation of the Office Lease.

## TWELFTH CAUSE OF ACTION

### Unjust Enrichment

### (Against Defendant & DOES 1 to 20)

243.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

244.   As alleged above, Defendants obtained money from Plaintiff for the delivery of The Subject Property. By doing so, Plaintiff conferred a benefit upon Defendant.

245.   Defendant have not performed any of the agreed upon obligations or performances under the terms of the Office Lease agreement.

246.   By failing to perform, Defendant has not conferred a benefit upon Plaintiff.

247.   Defendants have been unjustly enriched by their retention of the money in an amount to be determined according to proof at trial.

248.   It would be inequitable and unjust for Defendants to continue to retain money that was unlawfully obtained.

249.   As a direct and proximate cause of the unlawful acts and practices of the Defendants, Plaintiff have suffered, and continue to suffer, damages in an amount to be determined according to proof at trial for which Defendants have been unjustly enriched.

### THIRTEENTH CAUSE OF ACTION

**Conversion**

**(Against Defendants & DOES 1 to 20)**

250.    Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

251.    At all times herein mentioned, and in particular, on or about September 23, 2020, Plaintiff was still entitled to the possession of their personal property.

252.    On or about September 23, 2020, Defendants wrongfully exerted dominion over the personal property from Plaintiffs' possession.

253.    As a result, Plaintiff was damaged in that it has incurred extensive damage to its personal property by means of removing Plaintiff's property in storage on the premises.

254.    Plaintiff has also incurred damages by way of attorney fees and expenses in taking action to obtain remedies for Defendants' wrongful conduct.

255.    Plaintiff is informed and believe and thereon alleges that the above alleged wrongful conduct and act of conversion by Defendants was knowing, intentional, malicious, oppressive, and in disregard of Plaintiff's rights.

256.    Plaintiff is therefore entitled to an award for damages against Defendants according to proof to be determined at trial.

## FOURTEENTH CAUSE OF ACTION

### Trespass of Chattels

### (Against Defendants & DOES 1 to 20)

257.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

258.   Plaintiff owns and has a right to possession of the personal property that was restricted from their possession by Defendants.

259.   Defendants intentionally interfered with Plaintiff's use and possession of its personal property.

260.   As a result, Plaintiff was damaged in that Plaintiff has incurred loss of possession to their personal property by means of the removal personal property from the storage unit.

261.   Plaintiff has also incurred damages by way of attorney fees and expenses in taking action to obtain remedies for Defendants' wrongful conduct.

262.   Plaintiff is informed and believe and thereon alleges that the above alleged wrongful conduct and act of conversion by Defendants was knowing, intentional, malicious, oppressive and in disregard of Plaintiffs' rights.

263.   Plaintiff is therefore entitled to an award for damages against Defendants according to proof to be determined at trial.

## FIFTEENTH CAUSE OF ACTION

**Negligent Interference with Prospective Economic Advantage**

**(Against Defendants & DOES 1 to 20)**

264.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

265.   Plaintiff had a relationship with third parties which contained reasonably probable future benefits to the Plaintiff.

266.   Third parties were clients of the Plaintiff and were willing and able to make payments and/or bring potential cases to Plaintiff for its legal services.

267.   Defendants knew that Plaintiff had relationships with clients as Plaintiff was and is a law firm.

268.   Defendants knew or should have known that by not providing Plaintiff with an office space, as Defendants had previously represented, that Defendants actions would interfere with Plaintiff's ability to operate its law firm.

269.   As evidenced and alleged herein, Defendants' actions were negligent such as:

a.   Defendants made numerous misrepresentations regarding the lease.

b.   Defendants never obtained permits for the buildout.

c. Defendants were continually unable to finish construction on the property as evidenced by the fact that the building to date is still not completed.

270. The negligent actions by the Defendants have actually interfered with Plaintiff's ability to receive economic benefits with its relationships with third parties.

271. Plaintiff has not been able take on additional cases and matters as they could have if Plaintiff had an office space, instead Plaintiff's employees have been continually stuck working from home as it has waited for the office space to be completed.

272. As a direct and proximate cause of the Negligent Interference with Prospective Economic Advantage of the Defendants as alleged herein, Plaintiff has suffered, and continues to suffer damages in form of lost profits, expenses, and other damages in an amount to be determined according to proof at trial

## SIXTEENTH CAUSE OF ACTION

## EXTORTION

(Against DEFENDANTS and DOES 1 through 20)

273. Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

274.   Extortion is a crime and civil tort in California. Extortion is a form of theft that occurs when an offender obtains money, property, or services from another person through coercion. To constitute coercion, the necessary act can be a threat of violence, destruction of property, or improper government action. Filing frivolous lawsuits are also acts that constitute coercion. The commission of the tort is complete on the acts of the coercion being committed.

275.   As hereinabove alleged, Defendants deprived Plaintiff of its property for over seven months delay being a form of destruction, and filed a frivolous lawsuit unless paid on the contract Defendants breached.

276.   As a result of Defendants' extortion, Plaintiff has incurred damages Plaintiff has suffered, and continues to suffer damages in form of lost profits, expenses, and other damages in an amount to be determined according to proof at trial.

277.   Said conduct of Defendants was oppressive and malicious and for the purposes of damaging Plaintiffs for breaches Defendants performed as alleged herein, and on that basis, Plaintiff asks the Court to award exemplary or punitive damages against the Defendants.

## SEVENTEENTH CAUSE OF ACTION

### ABUSE OF PROCESS- INITIATING FRIVOLOUS LITIGATION

(Against DEFENDANTS and DOES 1 through 20)

278.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

279.   The Defendants named in this cause of action used the litigation process case Nos. X0-2020-005XXXXXX for a purpose initiating a frivolous complaint alleging breach of contract.

280.   Defendants used the litigation process for a purpose for which it is not intended. Specifically, Defendants used the litigation process for the purpose of deflecting blame for their breach of the lease agreement onto Plaintiff.

281.   Plaintiff believes that the Defendants in this cause of action have used and will continue to use the litigation process to the detriment of Plaintiff and in order to gain unjustified benefits, including monetary gains, by way of attempted extortion.

282.   Defendants, and each of them, as alleged herein, acted willfully, maliciously, and oppressively with conscious disregard of the rights of Plaintiff and Plaintiff is entitled to injunctive relief and also for all costs incurred in her lawsuits, in an amount to be proven at trial. In addition, Plaintiff is also entitled to exemplary and punitive damages from the

Defendants, and each of them, in an amount to be proven at trial under Civil Code section 3294.

283.   As a direct and proximate result of Defendants abuse of the process as described above, Plaintiff suffered damages including having to defend against the frivolous claims alleged and incur the associate costs with doing so.

284.   Plaintiff is informed and believes and based thereon alleges that Defendants' conduct described above, renders them guilty of oppression, fraud and malice. Therefore, in addition to actual damages, Plaintiff is entitled to recover damages for the sake of example and by way of punishing Defendants for complete abuse of the system, and their fraudulent, oppressive and malicious acts in an amount to be determined at trial.

## EIGHTEENTH CAUSE OF ACTION

### Mail and Wire Fraud

### Violation of RICO

285.   Plaintiff hereby repeats, re-alleges, and incorporates by reference all of the foregoing and subsequent paragraphs in this Complaint as though these paragraphs were set forth in full herein.

286.   "The elements of mail and wire fraud are: (1) the formation of a scheme to defraud; (2) the use of the mails or wires in furtherance of that

scheme; and (3) the specific intent to defraud." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018).

287.   "Mail fraud and wire fraud are forms of "racketeering activity" for purposes of RICO." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 454 (2006).

288.   "Any person injured in his business or property by reason of a violation of section 1962 [Rico activities] of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

289.   As previously alleged and fully incorporated herein, Defendants have made numerous misrepresentations to Plaintiff, which constitute fraud, including but not limited to the following:

  a.   Defendants misrepresented that building permits were obtained from the City of San Diego Permits, Approvals and Inspections Department (the "City"), when in fact the City never received any permit applications from Defendants.

  b.   Defendants specially represented over text messages on July 17, 2020, that the permits "are almost in"; however, no permit applications were ever filed with the City.

c.  Defendants sent emails to Plaintiff stating that the initial tenant improvement plans were approved by the City, when in fact they never were.

d.  Defendants sent numerous emails to Plaintiff indicating that the Subject Property would initially be ready by January 15, 2020, which it was not.

e.  Defendants represented that the Subject Property would then be ready by May 1, 2020, or at a reasonable time after, but the space is currently still unavailable for occupancy.

290.  Defendants used mail and wire communications interstate in furtherance of defrauding Plaintiff.

291.  Defendants have never performed any of their obligations with respect to leading the Subject Property, which is further evidence of their intent to defraud Plaintiff.

292.  As a direct and proximate cause of Defendants' Mail and Wire Fraud against Plaintiff as alleged herein, Plaintiff has suffered, and continues to suffer, damages in form of lost profits, expenses, and other damages in an amount to be determined according to proof at trial.

293.  Furthermore, Defendants' conduct, as described herein, was malicious, fraudulent and/or oppressive, as defined in Civil Code § 3294, which entitles Plaintiff to punitive damages by way of example and as a means

of punishing Defendants for engaging in such wrongful, despicable, and reprehensible conduct. The conduct of Defendants was done with knowledge of the wrongdoing and ratification thereof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgement as follows:

1.  An award of general damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus prejudgment interest;

2.  An award of consequential and incidental damages in an amount to be determined at trial;

3.  An award of punitive damages in an amount to be determined at trial, plus prejudgment interest;

4.  An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees and costs of prosecuting this action to the fullest extent permitted by law;

5.  For such other and further relief as the Court deems just and proper

//

//

//

Dated:  October 14, 2020

Respectfully submitted:
WHITESLATE, LLP dba SLATE LAW
GROUP


By:    /s/Kelly E. DuFord
_____
KELLY E. DUFORD


By:    /s/Christine A. Robles
_____
CHRISTINE A. ROBLES


By:    /s/ Bryan A. Blanco
_____
BRYAN A. BLANCO

Attorneys for Plaintiff
WHITESLATE, LLP dba SLATE LAW
GROUP

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby request a jury trial on all claims so triable.

Dated:  October 14, 2020

Respectfully submitted:
WHITESLATE, LLP dba SLATE LAW
GROUP

By:   */s/Kelly E. DuFord*

_____

KELLY E. DUFORD

By:  /s/*Christine A. Robles*

_____

CHRISTINE A. ROBLES

By:   */s/ Bryan A. Blanco*

_____

BRYAN A. BLANCO

Attorneys for Plaintiff
WHITESLATE, LLP dba SLATE LAW
GROUP